## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **WALTER D. ROBINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:09-cv-01543 JWS** |
| | ) | |
| **vs.** | ) | **ORDER AND OPINION** |
| | ) | |
| **CITY OF PHOENIX,** | ) | **[Re: Motion at Docket 82]** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### I.  MOTION PRESENTED

At docket 82, defendant City of Phoenix ("the City") moves for an award of attorneys' fees as the prevailing party in this civil rights litigation pursuant to 42 U.S.C. § 1988.  At docket 86, plaintiff Walter Robinson opposes the motion.  The City replies at docket 87.  Oral argument was not requested, and it would not assist the court.

### II.  BACKGROUND

Walter Robinson served with the Phoenix Police Department ("PPD") for more than 26 years.  Near the end of his career, Robinson entered PPD's Deferred Retirement Option Plan ("DROP"), which mandated that he retire by August 22, 2008, in exchange for various retirement benefits.

Robinson was offered the position of Program Manager with the Southwest Border High Intensity Drug Trafficking Area ("HIDTA"), and PPD agreed to contract Robinson to HIDTA from January 2008 to August 22, 2008, Robinson's retirement date. After Robinson accepted the position of HIDTA Acting Deputy Director, HIDTA Director Terry Azbill and others told him that he would be awarded the permanent position of HIDTA Deputy Director after he retired in August 2008.

Beginning in January 2008, Robinson worked in the same office location as Robin Cullison, the HIDTA Financial Manager.  Robinson concluded that Cullison was harassing him, and he reported Cullison's behavior and repeated threats to sabotage his career with HIDTA to various HIDTA personnel and to PPD Commander Michael Parra.  Subsequently, Robinson reported additional incidents involving Cullison. Because of Cullison's accusations against Robinson, the HIDTA Deputy Director selection process was cancelled.

Robinson provided a notice of claim to the City pursuant to A.R.S. § 12-821.01, which the City characterizes as vague and in need of clarification which Robinson refused to provide.  Robinson obtained no relief and subsequently commenced this lawsuit against PPD, HIDTA, and numerous individual defendants.[1]  PPD moved to dismiss all claims against it on the grounds that PPD is a non-jural entity.[2]  Robinson conceded the point in a motion to amend his complaint.[3]  Robinson was allowed to amend his complaint.  The First Amended Complaint named only one defendant, the City.[4]

The First Amended Complaint against the City alleged common law whistleblower and retaliation claims, violations of Robinson's due process rights under the Fourteenth Amendment pursuant to 43 U.S.C. § 1983 and § 1985(3), and a claim for punitive damages.  The City moved to dismiss Robinson's complaint pursuant to Rule 12(c).[5]

After the matter was briefed, the court granted the City's motion to dismiss.[6]  The court's order dismissing the state common law claim noted that while such a claim might

---

[1]Doc. 1.

[2]Doc. 25.

[3]Doc. 38.

[4]Doc. 65.

[5]Doc. 70.

[6]Doc. 80.

be viable when a whistleblower had acted to vindicate a public policy, Robinson's claim

was based exclusively on his own personal interest:

> "Whether a common law tort for wrongful termination still exists after the
> AEPA is an open and much debated question in Arizona law."  "To the
> extent a common law tort for wrongful termination remains after the AEPA,
> it would be based on 'whistleblowing activity which serves a public
> purpose' rather than employees' actions based on 'merely private
> proprietary' concerns."  Here, the court need not address the question of
> whether a common law tort for wrongful termination still exists after the
> AEPA because Robinson's amended complaint establishes that
> Robinson's "whistleblowing activity" was based on his personal concerns.
> More specifically, Robinson reported Cullison's threats to sabotage his
> future employment with HIDTA and reported Cullison and Gonzales's
> alleged affair and misuse of HIDTA funds and property based on private
> proprietary concerns, i.e., preventing damage to his chances of securing
> the HIDTA Deputy Director position.  Robinson's amended complaint does
> not allege nor demonstrate that Robinson's "whistleblowing activity" was
> based on concern that Cullison's actions "contravened the important
> public policy interest embodied in the law."  Moreover, Robinson's
> amended complaint does not allege that the City terminated his
> employment with PPD in retaliation for reporting Cullison's wrongful
> conduct.  To the contrary, the amended complaint acknowledges that
> Robinson's employment with PPD ended after he entered the DROP
> program, which mandated that he retire by August 22, 2008, in exchange
> for certain retirement benefits.[7]

Robinson also claimed that the City violated his due process rights under the

Fourteenth Amendment "by failing to conduct a timely investigation into Cullison's

allegations as required by the PPD Policy and Procedures Manuals," and by failing to

"adhere to its own policies when conducting its interview into allegations of misconduct

by Robinson and its intentional and retaliatory findings following Robinson's filing of a

Notice of Claim."[8]  Robinson further alleged that the City's denial of Robinson's due

process rights caused him to suffer damage to his reputation, undue stress and anxiety,

---

[7]Doc. 80 at pp. 5-6.

[8]Doc. 31 at p. 18.

"loss of pay, loss of work and an inability to locate and secure comparable employment elsewhere."[9]  The City's request to dismiss these claims was granted on the straightforward basis that Robinson could not establish a deprivation of a constitutionally protected liberty or property interest because the City did not terminate his employment.  Rather, Robinson agreed to participate in an early retirement program in exchange for certain retirement benefits.  The court found Robinson's argument that the City deprived him of a property interest in employment as a reserve officer with PPD unpersuasive.[10]

Robinson's amended complaint also alleged a due process claim under 42 U.S.C. § 1985(3).  The court held that the City was entitled to judgment as a matter of law on Robinson's claim under § 1985(3), because Robinson's amended complaint did not establish that the City engaged in a conspiracy to deprive Robinson of a protected property interest or his due process rights, and failed to even allege that the City's alleged deprivation of Robinson's constitutional rights was motivated by a racial or class-based invidiously discriminatory animus.

The First Amended Complaint included a claim for punitive damages.  Robinson conceded that the claim for punitive damages lacked merit.[11]

---

[9]*Id.* at pp. 17-18

[10]Doc. 80 at pp. 7-8.

[11]Doc. 76 at p. 14.

## III.  DISCUSSION

The Ninth Circuit has instructed that an award of attorney fees may be made to a

prevailing defendant pursuant to 42 U.S.C. § 1988, "only where the action is found to be

'unreasonable, frivolous, meritless, or vexatious.'"[12] In the seminal decision on the topic,

the Supreme Court put it this way:

> [A] plaintiff should not be assessed his opponent's attorney's fees unless a
> court finds that his claim was frivolous, unreasonable, or groundless, or
> that the plaintiff continued to litigate after it clearly became so.[13]

The Ninth Circuit has explained that "'[t]he terms 'frivolous', 'unreasonable' and 'without

foundation' as used in this context do not have appreciably different meanings.'"[14]

The proposition that Robinson's § 1983 claims were frivolous is succinctly

summarized by the City as follows: "Plaintiff brought a due process claim alleging he

was wrongfully terminated, even though he voluntarily retired.  His unilateral expectation

or hope about his job opportunities was never a valid property interest for purposes of

42 U.S.C. § 1983."[15]  Indeed, it was because Robinson was unable to show the

deprivation of a liberty or property interest, such as the loss of his job, that his § 1983

claim was dismissed.  There is nothing in Robinson's opposition to the pending motion

which asserts the contrary.  Moreover, it should have been obvious to Robinson's

lawyer from the outset that the lack of such deprivation doomed the § 1983 claim.  The

---

[12]*Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (quoting *Roberts v. Spalding*, 783 F.2d 867, 874 (9th Cir. 1986).

[13]*Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978)

[14]*Alaska Right to Life Political Action Committee v. Feldman, et al*, 504 F.3d 840, 852 (9th Cir. 2007) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 n.2 (9th Cir. 1993).

[15]Doc. 87 at p. 4.

court agrees with the City that pursuit of the § 1983 claim was frivolous.  The § 1985(e) claim was also frivolous, because the complaint did not even allege at least two of the elements necessary to support such a claim.[16]

Having determined that the civil rights claims were frivolous, it does not automatically follow that an award should be made to the City, for the lofty goal of the civil rights laws necessarily acts as a constraint on the award of fees to defendants lest the award chill the citizenry's efforts to enjoy the civil rights afforded by federal law. Here, the court concludes that a proper exercise of its discretion supports a reasonable award of fees pursuant to § 1988, because Robinson and his counsel easily should have realized that the civil rights claims being pursued were without merit.  This conclusion is well supported by the shortcomings in the First Amended Complaint, and the conclusion is substantially bolstered by the history preceding the filing of that complaint.  First, the City made an effort to force Robinson and his lawyer to think through his claims and explain the basis for them prior to the commencement of litigation.  Second, the untenable original complaint sheds light on the lack of attention to important legal issues which continued to infect Robinson's approach to the litigation.

Ultimately, Robinson lost on his state common law claims as well, but the fact is that these claims were not mere second thoughts.  The parties litigated them as if they were, and the court finds that they were, a significant part of the dispute between the parties.  The City points to no authority which would support an award on the state common law claims.  Thus, the amount of any award to the City must take into account

---

[16]*See* docket 80 at p. 8.

the fact that a portion of the fees incurred were incurred in order to deal with the state law claims.

Of course, the court must also take care to be sure that the number of hours and the hourly rates charged by the City's lawyers were reasonable.  Having examined the supporting materials, it is evident to the court that both the amount of time spent and the hourly rates were reasonable.  That leaves the question of how to allocate the $30,332 sought between the civil rights claims and the state law claims.  A few of the entries on defense counsel's time entries may be neatly tied to one or the other of the two sets of claims, but most of them cannot.  After studying the billing entries and considering the briefs filed by the parties, the court concludes that somewhat more than half of defense counsel's effort was directed at the civil rights claims.  However, because it is impossible to be precise, the court exercises its discretion to reduce the award for the civil rights claims to 50% of the total reasonable fees, a sum which the court is confident will not include fees associated with the state law claims.

## IV.  CONCLUSION

For the reasons above, the City's motion at docket 82 for an award of attorneys' fees is **GRANTED** as follows:   The Clerk will please amend the judgment to provide that the City of Phoenix recover the sum of $15,116 from plaintiff Walter D. Robinson.

DATED this 23rd day of September 2010.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE